UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT PADUCAH


**MARK W. PIERSON**
      Plaintiff


**v.**                                                    **No. 5:06CV-00188-J**

**MICHAEL J. ASTRUE**
      Commissioner of Social Security
      Defendant


MAGISTRATE JUDGE'S REPORT
and RECOMMENDATION


This matter is before the court upon the plaintiff's complaint seeking judicial review of the final decision of the Commissioner pursuant to 42 U.S.C. § 405(g). The plaintiff is represented by Stuart Peek. The fact and law summaries of the plaintiff and the defendant are at Docket Entry Nos. 6 and 9, respectively. This matter has been referred to the undersigned magistrate judge for report and recommendation pursuant to 28 U.S.C. § 636.

The final decision of the Commissioner was rendered on July 28, 2005, by administrative law judge (ALJ) George A. Mills III. In support of his decision denying Title II benefits, Judge Mills entered the following numbered findings:

1. The claimant meets the nondisability requirements for a period of disability and Disability Insurance Benefits set forth in Section 216(i) of the Social Security Act and is insured for benefits through the date of this decision.

2. The claimant has not engaged in substantial gainful activity since the alleged onset of disability.

3. The claimant's L5/S1 radiculopathy status post hemilaminotomy (02/2003), lumbar myofascial pain syndrome, and major depression are considered "severe" based on the requirements in the Regulations 20 CFR § 404.1520(c).

4.  These medically determinable impairments do not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4.

5.  The undersigned finds the claimant's allegations regarding his limitations are not completely credible for the reasons set forth in the body of the decision.

6.  The claimant has the residual functional capacity to lift and carry 10 pounds occasionally and less than 5 pounds frequently.  He is able to stand/walk for 2 out of 8 hours, and he requires a sit/stand option at one-hour intervals from his sitting posture due to back and leg pain.  He is limited in the use of foot controls for pushing and pulling to the weight limit of 10 pounds or less.  He can never climb ladders, ropes, or scaffolds, and he may occasionally climb ramps and stairs, balance, kneel, stoop, crouch, and crawl.  The claimant should avoid noisy background workplaces due to his reduced hearing, but he has the ability to hear normal conversational speech.  Due to his mental impairment, he is moderately limited in the ability to carry out detailed instructions and moderately limited in his ability to maintain attention and concentration for extended periods of time.  However, he retains the ability to perform simple, routine tasks on a sustained basis.

7.  The claimant is unable to perform any of his past relevant work (20 CFR  § 404.1565).

8.  The claimant is a "younger individual" (20 CFR  § 404.1563).

9.  The claimant has a "high school (or high school equivalent) education" (20 CFR § 404.1564).

10.  The claimant has no transferable skills from any past relevant work that transfer to his determined residual functional capacity (20 CFR  § 404.1568).

11.  The claimant has the residual functional capacity to perform a significant range of sedentary work (20 CFR  § 404.1567).

12.  Although the claimant's exertional limitations do not allow him to perform the full range of sedentary work, using Medical-Vocational Rule 201.21 as a framework for decision-making, there are a significant number of jobs in the national economy that he could perform.  Examples of such jobs include work as a table or bench packer (800 jobs), a miscellaneous assembler (1,200 jobs), and an inspector (800 jobs).

13.  The claimant was not under a "disability," as defined in the Social Security Act, at any time through the date of this decision (20 CFR  § 404.1520(g)).

(Administrative Record (AR), pp. 33-34).

### Governing Legal Standards

1.  The court has jurisdiction to examine the record that was before the Commissioner on the date of the Commissioner's final decision and to enter a judgment affirming, modifying, or reversing that decision. 42 U.S.C. § 405(g), sentence four. In exercising its "sentence four" jurisdiction, the court is limited to determining whether the Commissioner's controlling findings are supported by substantial evidence and whether the Commissioner employed the proper legal standards in reaching her decision. *Richardson v. Perales*, 402 U.S. 389 (1971). Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Kirk v. Secretary*, 667 F.2d 524 (6th Cir., 1981). It has been described as a sufficient amount of evidence "to justify, if the trial were to a jury, a refusal to direct a verdict." *Sias v. Secretary*, 861 F.2d 475, 480 n. 1 (6th Cir., 1988). In determining whether the Commissioner's findings are supported by substantial evidence, the court must examine the evidence in the record taken as a whole and must take into account whatever in the record fairly detracts from its weight. *Wyatt v. Secretary*, 974 F.2d 680 (6th Cir., 1992). However:

> The substantial-evidence standard allows considerable latitude to administration decision makers. It presupposes that there is a zone of choice within which the decision makers can go either way, without interferences by the courts. An administrative decision is not subject to reversal merely because substantial evidence would have supported an opposite decision.

*Mullen v. Secretary*, 800 F.2d 535, 545 (6th Cir., 1986).

When conducting substantial evidence review, the court is restricted to a consideration of the evidence that was before the Commissioner on the date of the final decision. When the Appeals Council declines to review the ALJ's decision and render a new decision, the ALJ's decision becomes the Commissioner's final decision. *Cotton v. Secretary*, 2 F.3d 692 (6th Cir., 1993).

2.   To be entitled to disability insurance benefits (DIB), a claimant must be under the age of 65 years, must meet the insured status requirements of Title II of the Social Security Act, and must be under a disability as defined by the Act.

3.   Disability determination is a five-step sequential evaluation process, to-wit:

**STEP #1** The claimant must not be engaged in substantial gainful activity.

**STEP #2** The alleged disabling impairment must be "severe." A "severe" impairment is one that "significantly limits" a claimant's ability to do "basic work activities" that are "necessary to do most jobs" such as walking, standing, sitting, lifting, seeing, hearing, and speaking. 20 C.F.R. §§ 404.1521 and 416.921. Only a "slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education and work experience" is "nonsevere." *Farris v. Secretary*, 773 F.2d 85, 89-90 (6th Cir., 1985). Any physical or mental impairment that has more than a <u>de minimis</u>, or significant, effect on the claimant's ability to work is "severe," and the sequential evaluation should proceed to Step #3. In addition, the "severe" impairment must satisfy the so-called duration requirement, to-wit, the impairment must be expected to result in death or "must have lasted or must be expected to last for a continuous period of at least 12 months." 20 C.F.R. §§ 404.1509 and 416.909.

4

**STEP #3** If the claimant has a medical condition that meets or exceeds the criteria for an impairment defined in Appendix 1 of 20 C.F.R. Part 404, Subpart P of the regulations ("the Listing"), a conclusive presumption attaches that the claimant is disabled.

**STEP #4** The claimant must not be able to perform his past relevant work either as he actually performed it or as it generally performed in the national economy.

**STEP #5** If the claimant makes a prima facie showing that he cannot perform his past relevant work, the burden of going forward with evidence shifts to the Commissioner to show that a significant number of jobs exist in the national economy that the claimant can perform. *Born v. Secretary*, 923 F.2d 1168 (6th Cir., 1990). The focus of judicial review in Step #5 cases is typically whether the controlling hypothetical posed to the vocational expert reflected all vocationally significant physical and mental limitations actually suffered by the claimant. *Varley v. Secretary*, 820 F.2d 777 (6th Cir., 1987).

**Discussion**

In February of 2002, the plaintiff injured his low back in a work-related accident. In February of 2003, in light of ongoing low back pain, the plaintiff was forced to quit work, and Sean McDonald, M.D., performed a lumbar hemilaminectomy and discectomy on the right at the L4-L5 and L5-S1 levels (AR, p. 165). The plaintiff describes the surgery as unsuccessful and "failed" in terms of providing pain relief (AR, p. 255). Post-surgical MRI's indicate the presence of scoliosis, degenerative changes at C5-C6, ventral epidural defect at L4-L5, and L5-S1 disc degeneration with bulging and scar tissue (AR, pp. 182-185). After surgery, the plaintiff was referred for pain management with Gay Richardson, M.D. Dr. Richardson's treatment notes are at AR, pp. 187-199 and 208-211. In June of 2004, the plaintiff was admitted to Western State Hospital

5

with a diagnosis of mood disorder due to chronic back pain with suicidal and homicidal thoughts (AR, p. 203).  Dr. Richardson's most recent notation dated February 3, 2005, states that the plaintiff continues to suffer from "right L5 and S1 radiculopathy on electrodiagnostic testing status post hemilaminectomy and discectomy February 2003" (AR, p. 208).  Dr. Richardson refilled the plaintiff's Lortab prescription.

## Dr. Kempton's Consultative Assessment

On February 9, 2004, the plaintiff was examined, at the Commissioner's request, by Michael Kempton, M.D.  Dr. Kempton provided an assessment in which the plaintiff's physical limitations were summarized as follows *(emphasis added)* (AR, p. 202):

> 1.  The patient has significant diminished hearing in the left ear, to the spoken voice, and has scars on the tympanic membrane, consistent with surgery.
>
> 2.  The patient has a fused lumbar spine, has decreased range of motion, decreased reflexes, particularly at the ankles.  He may have a significant amount of arthritis, whether this is Lyme's arthritis or not, whether Lyme's disease is an appropriate diagnosis in this patient is unknown, because of poor medical records to document this.  However, Medical Source Statement, as best as could be determined from this examination alone, **[1] postural limitations would be no climbing, balancing, kneeling, crawling, crouching, or stooping**. **[2] Periodic standing and sitting to relieve pain**. **[3] Standing and walking would be less than two hours of an eight-hour shift**. **[4] Lower extremity operation of foot controls, due to diminished reflexes and range of motion in the lower back, would be prohibitive**. Lifting less than 10 pounds, even on occasion.  The remainder of this examination was unremarkable.

For purposes of the present judicial review, Dr. Kempton's most significant findings were as follows:

1.  No stooping.

2.  A sit/stand option at unspecified periodic intervals as needed to relieve pain.

3.  Standing/walking less than two hours per eight-hour workday.

4.  No operation of foot controls.

### The Vocational Hypothetical

This case was denied at the fifth and final step of the sequential evaluation process based upon testimony at the administrative hearing of a vocational expert (VE). The VE testified that an individual with the limitations in ALJ's Finding No. 6 would retain the ability to perform the jobs in Finding No. 12. The ALJ presented an initial hypothetical that contemplated the following physical limitations *(emphasis added and numbered to correspond to Dr. Kempton's findings, supra)* (AR, pp. 281-282):

> ALJ:   [S]uch an individual would be limited to sedentary work. **[3] Standing and walking would never exceed two hours in an eight-hour day** and I would need to have **[2] a sit/stand option for this – for any long-term sitting ... at one hour intervals if you need**. ... **[4] The lower extremity operation of foot controls with the ... right leg and calf would be limited to the weight limits of sedentary, 10 pounds.** As far as climbing, ... **[1] no climbing, balancing, kneeling, crouching, crawling, or stooping**.  Because of the diminished or reduced hearing in the claimant's left ear, consider the avoidance of noisy background distraction that would affect his ability to hear due to background noise; however, ... such an individual could hear normal conversational speech.

For purposes of the present judicial review, the initial hypothetical's significant limitations were as follows:

1.  No stooping.

2.  A sit/stand option at one-hour intervals.

3.  Standing/walking not to exceed two hours per eight-hour workday.

4.  Operation of foot controls permitted up to 10 pounds of pressure on the right lower extremity.

Subsequently, the hypothetical was modified by way of the following exchange (AR, pp. 282-283):

7

> VE:      I'd   like   to   ask   you   one   thing   ...   about   the   RFC
> [i.e., residual functional capacity].   You said no climbing, balancing, kneeling.
> Do you really mean no or rare?
>
> ALJ:   Occasional. ... I would probably say never ladders, ropes, and scaffolds --

The exchange apparently led the VE to understand the hypothetical as contemplating an individual

who is able to occasionally perform postural activities such as climbing, balancing, kneeling,

crouching, crawling, and stooping but can never climb ladders, ropes, and scaffolds.   Therefore,

consistently with ALJ's Finding No. 6, the hypothetical as modified contemplated occasional

stooping.

### Dr. Kempton's Findings versus the ALJ's Findings

Dr. Kempton found as follows:

1.  No stooping.

2.  A sit/stand option at unspecified periodic intervals as needed to relieve pain.

3.  Standing/walking less than two hours per eight-hour workday.

4.  No operation of foot controls.

In comparison, the controlling vocational hypothetical contemplated as follows:

1.  Occasional stooping.

2.  A sit/stand option at one-hour intervals.

3.  Standing/walking not to exceed two hours per eight-hour workday.

4.  Operation of foot controls permitted up to 10 pounds of pressure on the right lower
extremity.

### The ALJ's Rationale for Modifying Dr. Kempton's Findings

In his written decision, the ALJ determined that the opinions of the nonexamining state agency reviewing physicians, which pre-date Dr. Kempton's assessment, are entitled to "very little weight" (AR, p. 31). Besides Dr. Kempton's assessment and the discounted state agency assessments, the magistrate judge is unaware of any other medical opinion in the administrative record pertaining to the issue of what the plaintiff can still do despite his physical impairments. It is apparent that the hypothetical attempted, at least loosely, to mirror the physical limitations assigned by Dr. Kempton. In his written decision, the ALJ found as follows (AR, p. 31):

> The opinions of Dr. Kempton were also considered. Dr. Kempton's opinions are generally consistent with the evidence and the claimant's determined residual functional capacity. However, Dr. Kempton's assessment was modified slightly in relation to the claimant's determined residual functional capacity to account for continuing evidence from Dr. Richardson, the claimant's testimony, and evidence from Dr. Haffner.

### Discussion

As indicated above, the only medical opinions in the administrative record pertaining to the plaintiff's physical RFC are those of the non-examining state agency physicians, which the ALJ gave very little weight, and those of Dr. Kempton, which the ALJ stated he "slightly modified." Generally, an ALJ is deemed to be unqualified to "interpret raw medical data in functional terms." *Nguyen v. Secretary*, 172 F.3d 31, 35 (1st Cir., 1999). Hence, a "hypothetical question is correct [only] if at least one doctor substantiates the information contained therein." *Godwin v. Secretary*, 1995 WL 871199 (E.D.Mich.). We shall consider the discrepancies between the findings of Dr. Kempton and those of the ALJ, which the ALJ characterized as "slight," in turn.

**Stooping**

Dr. Kempton opined that the plaintiff's arthritis and fused lumbar spine preclude stooping. The ALJ found that the plaintiff can "occasionally" stoop. Finding No. 6. "Occasional" is a term of art in Social Security disability law that means occurring from "very little up to one-third of the time." Social Security Ruling (SSR) 96-9p. "An ability to stoop occasionally; i.e., from very little up to one-third of the time, is required in most unskilled sedentary occupations." Id. The plaintiff contends that substantial evidence does not support the ALJ's finding that he retains the ability to "occasionally" stoop. The magistrate judge concludes that the ALJ had a substantial basis for finding that the plaintiff can stoop for up to a third of the workday only if the ALJ's finding that "continuing evidence from Dr. Richardson, the claimant's testimony, and evidence from Dr. Haffner" (AR, p. 31) did, in fact, substantially support departure from Dr. Kempton's opinion. We shall consider each item of evidence cited by the ALJ in support of his "slight modification" of Dr. Kempton's opinion in turn.

First, the ALJ cites the evidence from Dr. Richardson. After the plaintiff's back surgery in February of 2003, the plaintiff was referred to pain management with Dr. Richardson, whose treatment notes are at AR, pp. 187-199 and 208-211. The magistrate judge concludes that there is no indication in Dr. Richardson's notes that the plaintiff is capable of stooping up to a third of the workday. On the contrary, Dr. Richardson's most recent notation dated February 3, 2005, states that the plaintiff continues to suffer from "right L5 and S1 radiculopathy on electrodiagnostic testing status post hemilaminectomy and discectomy February 2003" and that the plaintiff's low back pain is exacerbated by housekeeping and community activities (AR, p. 208).

Next, the ALJ cites the plaintiff's own testimony.  At the hearing, the plaintiff explained to the ALJ in detail why he cannot stoop (AR, pp. 262-263).  The magistrate judge concludes that the plaintiff's testimony contradicts a conclusion that the plaintiff can stoop up to a third of the workday.

Finally, the ALJ attempted to rely upon the finding of Dr. Haffner.  Joel Haffner is a psychiatrist who treated the plaintiff at River Valley following his admission to Western State Hospital in June of 2004, with a diagnosis of mood disorder due to chronic back pain (AR, p. 203).  In February of 2005, Dr. Haffner provided a written assessment (AR, pp. 223-224).  The magistrate judge concludes that nothing in Dr. Haffner's assessment indicates that the plaintiff can stoop for up to a third of the time.  Therefore, the ALJ's reliance upon the plaintiff's testimony and the medical opinions of Drs. Richardson and Haffner in support of a conclusion that the plaintiff can occasionally stoop is unpersuasive.  The ALJ's "slight modification" of Dr. Kempton's finding that the plaintiff cannot stoop was neither slight nor supported by substantial evidence in the administrative record.

### Sit/Stand Option

Dr. Kempton opined that the plaintiff's physical impairments require a sit/stand option at unspecified periodic intervals as needed to relieve pain.  The "need to alternate between sitting and standing more frequently than every two hours ... significantly erode[s] the occupational base for a full range of unskilled sedentary work."  SSR 96-9p.  The magistrate judge concludes that the ALJ's reliance upon the plaintiff's testimony and the medical opinions of Drs. Richardson and Haffner in support of a conclusion that the plaintiff's need to alternate sitting and standing can be accommodated by an hourly change of position is unpersuasive.  Furthermore, the discrepancy is vocationally significant.

11

### Standing/Walking

Dr. Kempton found that the plaintiff can stand/walk for less than two hours per eight-hour workday.  The full range of sedentary jobs requires an ability to walk or stand for approximately two hours out of an eight-hour workday.  SSR 96-9p.  The magistrate judge concludes that the ALJ's reliance upon the plaintiff's testimony and the medical opinions of Drs. Richardson and Haffner in support of a conclusion that the plaintiff can stand/walk for up to two hours per eight-hour workday is unpersuasive.

### Operating Foot Controls

Finally, Dr. Kempton found that the plaintiff would be unable to operate foot controls.  In presenting the controlling vocational hypothetical, the ALJ found that  the "lower extremity operation of foot controls ... would be limited to the weight limits of sedentary, 10 pounds."  By this finding, the ALJ appears to conclude that the plaintiff can use foot controls if no more than 10 pounds of exertion at a time is required to do so.   The magistrate judge concludes that the administrative record does not support the ALJ's "modification" of Dr. Kempton's prohibition upon the use of foot controls, nor from a vocational perspective, is the ALJ's modification "slight."

### Findings and Conclusions

The magistrate judge concludes that the ALJ's physical RFC findings as contemplated the controlling vocational hypothetical are inconsistent with those of Dr. Kempton.  However, unlike Dr. Kempton, the ALJ was unqualified to "interpret raw medical data in functional terms." *Nguyen v. Secretary*, 172 F.3d 31, 35 (1st Cir., 1999).  The ALJ's cited rationale for modification of Dr. Kempton's medical opinions is unpersuasive and unsupported by the administrative record.  Therefore, the ALJ's reliance upon the vocational hypothetical in support of his fifth-step denial

decision was insubstantial and erroneous because the hypothetical did not accurately reflect the degree of the plaintiff's actual limitations as established by the probative medical evidence. See *Varley v. Secretary*, 820 F.2d 777 (6th Cir., 1987).

## The Appropriate Remedy

"If a court determines that substantial evidence does not support the [ALJ's] decision, the court can reverse the decision and immediately award benefits only if all essential factual issues have been resolved and the record adequately establishes a plaintiff's entitlement to benefits." *Faucher v. Secretary*, 17 F.3d 171, 176 (6th Cir., 1994).  The magistrate judge concludes that the record adequately establishes the plaintiff's entitlement to benefits for the following reasons:

1.  The ALJ limited or implicitly limited the plaintiff to unskilled work.  At the hearing, in response to the ALJ's hypothetical, the VE testified that "there's still a base of jobs in the unskilled labor marked with an SVP [i.e., specific vocational preparation] of 1 to 2" (AR, p. 283).  The VE characterized the jobs in Finding No. 12 as "unskilled" (AR, p. 284).   The ALJ cited Grid Rule 201.21 as a framework for decision-making.  The cited rule contemplates that any skills from previous work experience are not transferable.

2.  The ALJ asked the VE to assume that the individual is limited to sedentary work and "would need to have a sit/stand option ... at one hour intervals."  The "need to alternate between sitting and standing more frequently than every two hours ... significantly erode[s] the occupational base for a full range of unskilled sedentary work."   SSR 96-9p.   Therefore, the jobs in Finding No. 12 represent an eroded portion of the full range of sedentary work.

13

3.  For the reasons discussed above, the physical limitations assigned by Dr. Kempton were entitled to greater weight than any other medical opinion in the record and should have been included in the controlling vocational hypothetical.

4.  Dr. Kempton's finding that the plaintiff is unable to stoop further erodes the occupational base contemplated by the hypothetical because "[a] complete inability to stoop would significantly erode the unskilled sedentary occupational base and a finding that the individual is disabled would usually apply."  SSR 96-9p.

5.  Dr. Kempton's finding that the plaintiff can stand/walk for less than two hours total during an eight-hour workday further erodes the occupational base because the full range of sedentary work contemplates up to two hours of standing/walking.  SSR 96-9p.

6.  The occupational base is eroded yet again by Dr. Kempton's finding that the plaintiff cannot operate foot controls.

The magistrate judge concludes that the occupational base of available jobs consistent with Dr. Kempton's findings is so minuscule that a remand for further exploration of this matter would serve no useful purpose.

### The Plaintiff's Mental Impairments

In April of 2004, the plaintiff sought treatment at River Valley Behavioral Health.  In June of 2004, he was admitted to Western State Hospital with a diagnosis of mood disorder due to chronic back pain with suicidal and homicidal thoughts (AR, p. 203).   After release from Western State, he resumed treatment at River Valley with therapist Gertrude Brooks.  In March of 2005, Ms. Brooks completed the Functional Assessment of Mental Disorders, finding that the plaintiff is "severely" limited in 14 of 15 categories due to depression and anxiety related to "chronic back pain" (AR, pp. 230-231).

14

The magistrate judge has searched the administrative record and finds no mental RFC assessment by the state agency reviewing psychologists.  A review of the ALJ's written decision fails to reveal that the ALJ's mental RFC findings were based upon <u>any</u> medical source opinion. The undersigned concludes that the ALJ's mental RFC findings lack substantial support in the administrative record because, as already indicated in another connection, an ALJ is deemed to be unqualified to "interpret raw medical data in functional terms." *Nguyen v. Secretary*, 172 F.3d 31, 35 (1st Cir., 1999).  A "hypothetical question is correct [only] if at least one doctor substantiates the information contained therein." *Godwin v. Secretary*, 1995 WL 871199 (E.D.Mich.).  Furthermore, even if the court were to conclude that the ALJ somehow properly intuited the mental restrictions in ALJ's Finding No. 6, the record reveals no expert basis in support of a conclusion that the plaintiff has no additional vocationally-significant restriction.  The plaintiff persuasively argues that the ALJ's mental RFC finding is incomplete and unsupported.

However, the plaintiff's argument that the ALJ failed to consider Ms. Brooks' assessment is self-refuting in light of the ALJ's discussion of her assessment at AR, pp. 31-32.   The magistrate judge concludes that the ALJ identified a substantial basis for declining to defer to Ms. Brooks' disabling findings.  However, this conclusion does not cure the fundamental errors identified above.

15

## RECOMMENDATION

The magistrate judge RECOMMENDS that this matter be REMANDED to the Commissioner for calculation and payment of past-due Title II benefits based upon the plaintiff's application filed on or about December 16, 2003, and his alleged onset of disability date on February 6, 2003.

## NOTICE

Pursuant to 28 U.S.C. § 636(b)(1), any party shall have a period of ten (10) days, excluding intervening Saturdays, Sundays, and/or legal holidays pursuant to Fed.R.Civ.P. 6(a), from the date of notice of electronic filing within which to file written objections to the foregoing report with the Clerk of the Court. Further and pursuant to Fed.R.Civ.P. 72(b), any party may file a response to objections filed by another party within ten (10) days, excluding Saturdays, Sundays, and/or intervening legal holidays, after being served with a copy of said objections. A period of three days shall be added to each ten (10) day period above pursuant to Fed.R.Civ.P. 6(e).

The court shall not conduct a de novo review of objections that are general, conclusory, or merely adopt previous pleadings. The original objections shall be sent to the Clerk of Court either electronically or by mail. A copy of any objections and response thereto shall be served on the undersigned at Suite 330, 501 Broadway, Paducah, Kentucky, 42001 or via e-mail to w_david_king@kywd.uscourts.gov. Failure of a party to file timely objections shall constitute a waiver of the right to appeal by that party. *Thomas v. Arn*, 474 U.S. 140 (1985).

16